IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Del Grant, # 285741, ) | |
| ) | |
| ) | Civil Action No. 6:15-1697-BHH-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Robert Stevenson, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2254.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the district court.

## BACKGROUND

The petitioner is currently incarcerated at the Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC"). The petitioner was indicted by the Charleston County Grand Jury in November 2006 for two counts of murder (Indictment Nos. 2006-GS-10-11480, 2006-GS-10-11481) (app. 572–75). On November 5–7, 2007, the petitioner was tried before the Honorable Howard P. King, South Carolina Circuit Judge, and a jury (app. 1–571). Attorney Margaret Helen Fanning represented the petitioner at trial. Assistant Solicitors Burns Malone Wetmore and Peter McKoy represented the State. On November 7, 2007, the jury found the petitioner guilty as

charged (app. 558–61). Judge King then sentenced the petitioner to concurrent life sentences (app. 568–70).

## *Underlying Case Facts*

The petitioner was convicted of murdering Robert Bryant and Sadaris Nelson[1] (app. 557–61). At the petitioner's trial, multiple witnesses testified that they were present when the petitioner shot the victims (app. 68–70, 80–84, 122–24, 203–06). On February 24, 2005, around noon, the petitioner's older brother, Gary Grant, and Gary's friend, Cordero Porcher, got into an altercation with Deshawn Gathers (app. 73–75, 210–11). Gary and Porcher accused Gathers of telling Michael Mitchell (a/k/a "Project") that they had broken into his house (app. 74, 210–11). Gathers and Porcher got into a fistfight, which Gary broke up. Then they parted ways (app. 74–75).

After the altercation, Gathers called Project and asked if he had been telling people that Gathers had told him that people broke into his house. Project said he had not (app. 75–76). Soon after, Gathers saw Project heading over to an area called Woodlawn (app. 76). Two cars—one white and one green—pulled up to a house in Woodlawn where Gary and some others were hanging out (app. 211–12). Project jumped out from the passenger seat of one of the cars and shot at them (app. 129, 131, 211–13). Gary was grazed by a bullet during the shooting (app. 132, 213–14, 217).

In the meantime, Gathers had gone home to put some ice on his face (app. 76). After knocking on Gathers' door, the petitioner,[2] Cordero Porcher, Devant Porcher, and Gary walked in (app. 76–77). They asked Gathers about Project and the rumors going around about the break-in (app. 77). Gathers heard the petitioner tell Gary that he was going to "handle it" (app. 78). The petitioner had a black 9 mm gun at the time. Gathers

---

[1]This victim's name is sometimes spelled Cederious or Sadiris in the record (app. 89).

[2]The petitioner is called "D.L." (app. 85).

2

told everyone that they had to go outside.  While everyone was standing outside, the victims pulled up in a green Oldsmobile 88 (app. 79–80).  Nelson got out of one of the cars and started arguing with Gary and the Porchers about the earlier shooting at Woodlawn (app. 80–81, 218–19).  According to Gathers, "after a couple of words was exchanged, [the petitioner] came up from behind and shot Sadaris Nelson" (app. 81, 137–38, 221–22).  Nelson, who had been shot in the neck, fell to the ground.  Bryant came around the car, and the petitioner shot him (app. 82, 129, 222–24).  Bryant fell to the ground.  The petitioner then shot both victims again—shooting Nelson once and Bryant twice (app. 82–83).  The petitioner fled the scene at that time (app. 84, 138–39).  He was arrested seventeen months later in Springfield, Illinois, and was charged with the murders of Nelson and Bryant (app. 275–80).

Aside from the petitioner's co-defendants, who witnessed the shooting and testified at trial, Nelson's sister (a minor), testified that she was in Gathers' neighborhood the day her brother was shot (app. 386).  Nelson's sister saw her brother and Bryant arguing with Gary. Nelson told her to go back inside the house.  She went inside and watched what was happening from the window (app. 388–89).  Nelson's sister saw the petitioner run out of Gathers' house and shoot her brother (app. at 390–92).  She ran to grab a phone, and when she returned to the window, she saw her brother and Bryant lying on the ground beside each other (app. 392–93).  She saw the petitioner and Gary running away, jumping up and down (app. 393–94).

The petitioner presented the testimony of his older brother Gary (also a co-defendant) as part of his defense (app. 435–75).  Gary testified that he murdered Nelson and Bryant (app. 436–40).  Gary claimed that he did not see the petitioner when he was in Gathers' neighborhood (app. 456).

***Direct Appeal***

The petitioner timely sought a direct appeal of his conviction and sentence (doc. 13-4). On October 13, 2009, Robert M. Dudek, Deputy Chief Appellate Defender for Capital Appeals with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967) on the petitioner's behalf. The single issue raised by appellate counsel was "[w]hether the court erred by allowing the solicitor to question alleged eyewitness Gathers about promising to tell the truth pursuant to his agreement with the solicitor since this impermissibly bolstered his testimony by placing the prestige of the solicitor's office behind the witness's testimony?" (doc. 13-5 at 3). Appellate counsel also asked to be relieved as counsel since "in his opinion, the appeal is without legal merit sufficient to warrant a new trial" (*id*. at 10). The petitioner filed a *pro se* brief asking, "Did the trial court err in not directing a verdict of acquittal when Gary Grant testified under Oath that he was the one who shot the two victims and not the Appellant?" (doc. 13-7). In an unpublished opinion filed August 25, 2010, the South Carolina Court of Appeals dismissed the petitioner's direct appeal (doc. 13-8). The South Carolina Court of Appeals also granted appellate counsel's motion to be relieved as counsel.

Thereafter, the petitioner filed a *pro se* notice of appeal, which was denied by the Supreme Court of South Carolina on September 3, 2010. The remittitur was issued on September 13, 2010.

***PCR***

The petitioner filed a *pro se* post–conviction relief ("PCR") application on December 31, 2010. The petitioner outlined the substance of his claims in an attachment to his PCR application:

> (10) State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:

(A) Ineffective assistance of trial counsel

(11) State concisely and in the same order the facts which support each of the grounds set out in (10):

(A) Counsel failed to recross codefendants Deshawn Gathers, Devant Porcher and Cordero Porcher testimonies. Counsel should have recrossed each codefendant and witness [R.W.] to further establish to the jury that each co-defendant and witness was giving false details of what they supposedly saw at the crime scene.

(B) Counsel failed to argue on jurys asking for a written testimony from [R.W.], Cordero Poercher, Deshawn Gathers and Devant Porcher. When the judge informed the jury he could only provide them with recorded testimony, the jury said they only wanted to hear Deshawn Gathers testimony. Counsel should have argued that the jury should hear tapes of all the above names since they wanted a written testimony from all the above names

(C) Counsel informed me I should give the jury the option of finding me guilty of voluntary manslaughter. She showed me on a lap top where I could receive 30 years if found guilty and that it would be in my best interest to give the jury the option of finding me guilty of voluntary manslaughter due to counsels urging. After I gave the jury the option counsel told me I shouldn't have because it ruined my chances on Appeal. I only gave the jury the option of finding me guilty of voluntary manslaughter due to counsels urging.

(D) Counsels efforts in getting my motion Discovery to me wasn't pushed hard enough I got my motion discovery August 3rd 2007 and I went to trial November 5th 2007. Counsel neither I was properly prepared for trial.

(E) Upon representation I only had 3 visits from Counsel. The first was to let me know she was going to be representing me which it only lasted 15–20 minutes the second was to show and go over pictures of the crime scene and the bodies

5

of the victims. The third was brief 10 minutes to see if I had trial clothes prepared and to let me know trial was starting Monday November 5th 2007. Counsel never prepared me for trial.

(F) Counsel failed to move for a time reconsideration. I wrote counsel November 9th 2007 asking counsel to ask or go through the proper procedure for a time reconsideration. Counsel told me she no longer represents me it should go through my Appellant lawyer. I wrote counsel two days after I was found guilty.

(G) Defendant D'el Grant moved to have counsel Margaret Fanning removed from his case. Judge said defendant D'el Grant could not fire counsel if he did not have money to obtain new counsel and then Judge Dennis asked Defendant did he have a law degree or knew anything about the law Defendant said no. Judge Dennis informed Defendant he would have to keep Margaret Fanning as counsel it would be his best interest. I never wanted to finish or start trial with Counsel Margaret Fanning.

(H) Counsel informed me of a plea for 30 years. Counsel failed to tell me the stipulations of the plea. Counsel never said whether the 30 years was for 1 or both of the murders. If Counsel would have stipulated the plea agreement Defendant would have a better understanding.

(I) Counsels representation during trial wasn't put forth with determination only with a little effort in arguing of a photo council stated the case was not about 2 dead men in order for it to be a double murder trial it had to be about the 2 dead men or it wouldn't have been a trial. Counsels representation wasn't where it needed to be in her stating the case wasn't about 2 dead men.

(10) State concisely the grounds of which you base your allegation that you are being held in custody unlawfully:

    (A) Ineffective assistance of trial counsel

(11) State concisely and in the same order the facts which support each of the grounds set out in (10):

6

> (A) Appellant Counsel failed to argue co-defendants credibility which they gained freedom from there false testimonies. Devant Porcher had 2 murder charges pending and a possession of crack cocaine pending upon his testimony. Deshawn Gathers had 2 murder charges, 2 weapons charges and 2 drug charges pending upon his testimony. Cordero Porcher had 2 murder charges, second degree lynching, trafficking and possession of crack cocaine with intent to distribute upon his testimony.
>
> (B) Counsel failed to argue chain of custody of evidence. Detective Reynolds stated he never followed up with evidence and was moved to another job. He wasn't sure if evidence was tucked or sent out for testing.
>
> (C) Counsel failed to argue photos of evidence at motel where suspects Gary Grant, Cordero Porcher and Keshia Brown were arrested were not tooken [*sic*] into evidence in which it was thrown away
>
> (D) Appellant failed to argue confession of co-defendant Gary Grants confession that it was he and not D'el Grant who shot and killed both victims.

(App. 578, 583–86)

The State filed its return on April 4, 2011 (app. 589–93). An evidentiary hearing was convened on December 6, 2012, before the Honorable Roger M. Young, Sr., South Carolina Circuit Judge (app. 594–680). The petitioner was present and represented by Arie Bax at the hearing (app. 594). The State was represented by Assistant Attorney General Ashleigh Wilson (*id.*). By order dated January 3, 2013, but filed on January 4, 2013, Judge Young found that the petitioner had not established any constitutional violations or deprivations and, accordingly, denied and dismissed the PCR application with prejudice (app. 681–90).

### *PCR Appeal*

On January 16, 2013, the petitioner's counsel noticed his appeal of the PCR dismissal. On September 3, 2013, Kathrine H. Hudgins, Appellate Defender with the South

Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a *Johnson*[3] petition for writ of certiorari, raising the issue, "Was trial counsel ineffective in failing to object to the sentencing judge's improper consideration of the fact that the petitioner's family was not present at sentencing in refusing leniency and sentencing the petitioner to life imprisonment?" (doc. 13-13 at 2). Along with the *Johnson* petition, PCR appellate counsel filed a petition to be relieved as counsel as "[i]n her opinion seeking certiorari from the order of dismissal is without merit" (*id*. at 8).

On October 3, 2013, the petitioner filed a *pro se* response to the petition for writ of certiorari raising the following issues:

> Did trial counsel erred in failing to object to the Trial judge Failure to properly instruct the jury, the element[s] of the two count(s) of murder in resolving the doubt to the petitioner favors As to an lesser including offense of manslaughter where there were reasonable doubt to murder?
>
> Did trial counsel erred in failing to encourage petitioner to accept the states (30) thirty year plea offer, which was lesser than the (2) two life sentences upon conviction, as the defense had (4) four eye witnesses. Which indeed scoped [*sic*] petitioner shoot both decease?
>
> Did (PCR) hearing judge erred in finding the petitioner did not meet his burden of proving ineffective assistance of trial counsel?

(Doc. 13-15).

On August 21, 2014, the Supreme Court of South Carolina denied the petition and granted PCR appellate counsel's request to withdraw (doc. 13-16). The remittitur was

---

[3]The Supreme Court of South Carolina "has approved the withdrawal of counsel in meritless post-conviction appeals, provided the procedures outlined in *Anders v. California*, 386 U.S. 738 (1967), were followed." *Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988). The state court adheres to this requirement even though the United States Supreme Court held, in *Pennsylvania v. Finley*, 481 U.S. 551 (1987), that such procedures are not required. *Id*.

issued on September 8, 2014. The Charleston County Public Index reflects that the remittitur was filed with the lower court on September 10, 2014 (doc. 13-18).

## FEDERAL PETITION

On April 23, 2015, the petitioner filed his Section 2254 petition (doc. 1). On June 18, 2015, the respondent filed a motion for summary judgment (doc. 12) and a return and memorandum (doc. 13). By order filed on June 19, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion (doc. 14). After being granted an extension of time, the petitioner filed a response (doc. 20) in opposition to the motion for summary judgment on August 21, 2015.

In his federal petition, the petitioner makes the following claim:

**Ground One:** Was trial counsel ineffective in failing to object to the sentencing judges improper consideration of the fact that petitioner's family was not present at sentencing in refusing leniency and sentencing prisoner to life imprisonment?

**Supporting Facts:** Trial Court stated, "I, too, am shocked that this young man has no family support. It's very difficult for this court to show leniency when there is apparently indifference from his own family

(Doc. 1 at 5).

In his response to the motion for summary judgment, the petitioner raises his second and third grounds for habeas relief:

DID THE TRIAL COURT ERR IN NOT DIRECTING A VERDICT OF ACQUITTAL WHEN GARY GRANT TESTIFIED UNDER OATH THAT HE SHOT AND KILLED THE TWO VICTIMS AND NOT THE PETITIONER?

WHETHER THE COURT ERRED BY ALLOWING THE SOLICITOR TO QUESTION ALLEGED EYEWITNESS GATHERS ABOUT PROMISING TO TELL THE TRUTH PURSUANT TO HIS AGREEMENT WITH SOLICITOR SINCE

9

> THIS IMPERMISSIBLY BOLSTERED HIS TESTIMONY BY PLACING THE PRESTIGE OF THE SOLICITOR'S OFFICE BEHIND THE WITNESS'S TESTIMONY?

(Doc. 20 at 3, 5).

## APPLICABLE LAW AND ANALYSIS

***Summary Judgment Standard***

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***Exhaustion***

Before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203, SCACR; S.C. Code Ann. §§ 17–27–10,–90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C.1976). If the PCR court fails to address a claim as is required by South Carolina Code § 17–27–80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP to preserve the issue for appellate review. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007).[4]

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). In *McKennedy*, the South Carolina Supreme Court specifically held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan [v. Boerckel*, 526 U.S. 838 (1999)]." 559 S.E.2d at 854. Accordingly, a claim would not be procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the South Carolina Court of Appeals, either after a direct appeal or after pursuing relief in a PCR petition.

---

[4]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

A habeas petitioner must first present his claim to the court in a manner in which it may be reviewed on the merits. *Harris v. Reed*, 489 U.S. 255, 262 (1989); *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It is well settled in South Carolina that "[i]ssues not raised and ruled upon in the trial court will not be considered on appeal." *State v. Dunbar*, 587 S.E.2d 691, 693-94 (S.C. 2003). Moreover, it is not enough that the argument presented stems from the same factual scenario; rather, the legal argument must be the same as the argument presented below. *See, e.g., State v. Haselden*, 577 S.E.2d 445, 448 (S.C. 2003) (finding differing ground for objection did not preserve issue presented for review: defendant's objection on relevancy did not preserve argument the evidence was improper character evidence); *State v. Caldwell*, 662 S.E.2d 474, 482 (S.C. Ct. App. 2008) ("Because the argument raised on appeal does not appear to have been specifically raised below, it may not be preserved on appeal."). Counsel for respondent acknowledges that the petitioner has exhausted his state court remedies and has no available state court remedies at this time (doc. 19 at 7–8).

*Procedural Default*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief on an issue after he failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he or she is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court has explained:

> [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

"[A] federal court ordinarily may not consider claims that a petitioner failed to raise at the time and in the manner required under state law unless 'the prisoner demonstrates cause for the default and prejudice from the asserted error.'" *Teleguz v. Pearson*, 689 F.3d 322, 327 (4th Cir. 2012) (quoting *House v. Bell*, 547 U.S. 518, 536 (2006)). To show cause, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding." *Roach v. Angelone*, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, Petitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. However, "actual innocence" requires "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

The petitioner's first ground is procedurally barred because that issue was not raised to and ruled on by the PCR court and, thus, was not available for review in the PCR appeal. *See Marlar v. State*, 653 S.E.2d at 266 ("The failure to specifically rule on the issues precludes appellate review of the issues.").[5] As will be discussed below, even to the extent the petitioner might assert that PCR counsel was ineffective in failing to raise and

---

[5] This procedural bar has been acknowledged as a "consistently" applied state-law based procedural rule for purposes of a default analysis, at least after clarification in the November 5, 2007, *Marlar* opinion. *See Bostick*, 589 F.3d at 164 (finding that the rule was not consistently applied until the Supreme Court of South Carolina clarified same in *Marlar*). The petitioner's action, having been decided by an order dated January 3, 2013, and filed January 4, 2013, is subject to this bar.

13

preserve that issue, such an allegation would be insufficient to overcome the default as the petitioner cannot "demonstrate that the underlying ineffective assistance of trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez v. Ryan*, 132 S. Ct. 1309, 1318 (2012).

### *Ineffective Assistance of Counsel*

To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 104 (internal citations omitted).

The petitioner alleges that trial counsel was ineffective for because he failed to object to the trial court's alleged improper consideration of the fact that the petitioner's family was not present at sentencing. During sentencing, trial counsel spoke on behalf of the petitioner and asked the court for leniency (app. 567–68). Prior to sentencing the petitioner, the trial court noted:

> There [are] no winners here only victims. The victims are the two young men that were killed and this young [man] is a victim as well. This is a tragedy for everyone involved. I, too, am shocked that this young man has no family support. It's very difficult for this court to show leniency when there is apparently indifference from his own family.
>
> Nonetheless, I have tried to weigh all of the competing factors that we have to weigh in connection with this and it is my view that a life sentence is appropriate.

(App. 569). Trial counsel did not object (app. 570).

Trial counsel is presumed to have competently represented the petitioner at trial. *Carter v. Lee*, 283 F.3d 240, 249 (4th Cir. 2002) ("Because it may be tempting to find an unsuccessful trial strategy to be unreasonable, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689) (additional internal citations omitted)). The petitioner has done nothing to rebut this presumption. He has failed to establish that trial counsel's actions fell outside the wide range of reasonable, professionally competent assistance. *See Strickland*, 466 U.S. at 689 ("[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case."). The petitioner has also failed to establish that the trial court's sentencing considerations were inappropriate. *See State v. Franklin*, 226 S.E.2d 896, 898 (S.C. 1976) ("A trial judge generally has a wide discretion in

determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider or the source from which it may come." (citing *United States v. Magliano*, 336 F.2d 817 (4th Cir. 1964); *North Carolina v. Pearce*, 395 U.S. 711 (1969))). Contrary to the petitioner's claim, the exact words used by the trial judge indicate that he discounted the fact that the petitioner's family was absent—"It's very difficult for this court to show leniency . . . . Nonetheless, I have tried to weigh all of the competing factors that we have to weigh in connection with this . . . " (app. 569). Accordingly, the petitioner has failed to show either that trial counsel provided deficient representation by failing to object during the sentencing proceedings or that the sentencing considerations were inappropriate.

Furthermore, there was no showing of prejudice. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

Based upon the foregoing, this ground for relief is without merit and is procedurally barred.

**New Grounds Raised in Petitioner's Response**

As earlier stated, the petitioner raises two new grounds in his response to the respondent's motion for summary judgment: (II) the trial court erred in not directing a verdict of acquittal when Gary Grant testified under oath that he shot and killed the two victims and not the petitioner; and (III) the trial court erred by allowing the Solicitor to question the alleged eyewitness Gathers about promising to tell the truth pursuant to his agreement with Solicitor because this impermissibly bolstered his testimony by placing the prestige of the Solicitor's office behind the witness' testimony (doc. 24 at 3, 5). These grounds were not raised in the original habeas petition (doc. 1).

Appended to the petitioner's response is the petitioner's affidavit, wherein he states why he did not include them in the original petition:

> I, Del Grant, mistakenly in my Petition for Writ of Habeas Corpus left off Grounds "2" and "3." A fair reading of my habeas application on page 3 will show that I intended to raise these grounds as they're ripe for review. I am assuming that Respondent would have also moved for summary judgment on these issues. So I would be including them in my response to summary judgment and return.

(Doc. 20-1).

The petitioner did not list Grounds II and II in the Section 2254 petition (*see* doc. 1 at 6 (space for listing Ground Two left blank) and 8 (space for listing Ground Three left blank)). The respondent has not addressed these grounds as they were not raised in the original petition. It is well-settled in this district that new matters cannot be raised in a response to a motion for summary judgment. *See White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment") and *Neumon v. Cartledge*, C.A. No. 8:14-cv-2256-RMG, 2015 WL 4607732, at *9 n. 9 (D.S.C. July 31, 2015) (applying *Roche* in a Section 2254 habeas corpus action).

Furthermore, these grounds appear to raise only state law matters. Ground Two was exhausted in the direct appeal via the petitioner's *pro se* brief (doc. 13-7) and by the decision of the South Carolina Court of Appeals in the direct appeal (doc. 13-8). Nonetheless, federal habeas relief is restricted to claims alleging an improper application of federal law. 28 U.S.C. § 2254(d)(1) (application shall not be granted unless the claim was based on an improper application of federal law); *see also Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts. The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner only on

17

the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted) (emphasis in original). Hence, Ground Two is not a basis for federal habeas corpus relief because it is an issue of state constitutional and jurisdictional law and does not implicate any federal constitutional claims. *See Wright v. Angelone*, 151 F.3d 151, 156–58 (4th Cir. 1998); *Chance v. Garrison*, 537 F.2d 1212, 1215 (4th Cir. 1976); and *Grundler v. North Carolina*, 283 F.2d 798, 802 (4th Cir. 1960) ("Normally, the admissibility of evidence, the sufficiency of evidence, and instructions to the jury in state trials are matters of state law and procedure not involving federal constitutional issues."), which hold that state law issues are not valid grounds for federal habeas corpus relief. The petitioner cannot obtain federal habeas corpus relief on a state law ground. *See Wright v. Angelone*, 151 F.3d at 156–58; *cf. Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Essentially, with respect to Ground Two, there is no alleged violation of *federal* law to review. See 28 U.S.C. § 2254(d)(1) (application shall not be granted unless the claim was based on an improper application of federal law).

Ground Three was raised by appellate counsel as the one ground in the direct appeal (doc. 13-5 at 3) and was exhausted in the direct appeal. Evidentiary rulings, however, are generally considered state law matters. *Spencer v. Murray*, 5 F.3d 758, 763 (4th Cir. 1993) ("[A] claim about the admissibility of evidence under state law rarely is a claim upon which federal habeas corpus relief can be granted."). Evidentiary rulings will not be considered in federal habeas "'unless [the] erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.'" *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008) (quoting *Burket v. Angelone*, 208 F.3d 172, 186 (4th Cir. 2000)). Hence, Ground Three suffers the same defect as Ground Two: it is a ground based solely on state law. *Chance*, 537 F.2d at 1215.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment (doc. 12) be granted. It is also recommended that the District Court deny a Certificate of Appealability. The attention of the parties is directed to the Notice on the next page.

s/ Kevin F. McDonald<br>United States Magistrate Judge

December 8, 2015
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court
United States District Court
300 East Washington Street — Room 239
Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).